OPINION
{¶ 1} Plaintiff-appellant, Matthew Hedmond, appeals from a judgment of the Franklin County Court of Common Pleas denying plaintiff's motion for summary judgment and granting the summary judgment motion of defendant-appellee, Admiral Insurance Company ("Admiral"). Because we find no reversible error, we affirm the trial court's judgment.
 {¶ 2} Plaintiff brought suit against Westglen Corporation ("Westglen") and other defendants for injuries sustained on December 4, 1996, when plaintiff was injured using a meat-grinding machine that Westglen manufactured. During the course of litigation, on July 12, 1999, in a stipulation of dismissal pursuant to Civ.R. 41, Admiral and Admiral's counterclaim were dismissed without prejudice.
 {¶ 3} On March 6, 2000, the common pleas court entered a default judgment against Westglen in favor of plaintiff and referred the matter to a magistrate for a damages hearing. Subsequently, on June 22, 2000, the common pleas court, adopting a magistrate's recommendation, found Westglen liable for $1,484,403.72 in damages with interest at a rate of ten percent per annum, plus court costs.
 {¶ 4} To partially satisfy the June 22, 2000 judgment, on March 14, 2001, Hedmond filed a supplemental complaint against Admiral pursuant to R.C. 3929.06 that sought $1,000,000 in liability coverage under a commercial general liability insurance policy issued to Westglen by Admiral. Both parties later moved for summary judgment. On July 30, 2002, the common pleas court granted Admiral's summary judgment motion and denied plaintiff's motion for summary judgment.
 {¶ 5} From the common pleas court's July 30, 2002 judgment, plaintiff timely appeals and assigns two errors:
 {¶ 6} "[1.] The trial court erred in granting summary judgment to appellee Admiral Insurance.
 {¶ 7} "[2.] The trial court erred in denying summary judgment to appellant Matthew Hedmond."
 {¶ 8} Because plaintiff's assignments of error are interrelated, we address them jointly.
 {¶ 9} Appellate review of summary judgment motions is conducted under a de novo standard. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 10} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421, 430; Civ.R. 56(E).
 {¶ 11} Plaintiff first contends this case must be considered under California law and, if California law is applied, plaintiff is entitled, as a matter of law, to recover against insurance policy number A97AG02533 issued by Admiral to Westglen. Furthermore, plaintiff contends the trial court erred when it determined the outcome of the case "is the same whether Ohio law or California law applies." Decision filed June 3, 2002, at 4.
 {¶ 12} "It is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature." Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107, 109, citing Ohio Farmers Ins. Co. v. Cochran (1922), 104 Ohio St. 427. Here, the insurance policy at issue does not contain any choice of law provision; rather, the policy provides Admiral "will submit to the jurisdiction of any court of competent jurisdiction within the United States of America or Canada." (Exhibit 6 attached to plaintiff's April 1, 2002 motion for summary judgment.) Therefore, this court must determine whether California or Ohio law applies. See Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus ("[t]he construction of written contracts and instruments of conveyance is a matter of law"). See, also, Ohayon v. Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474, 480 ("[a]fter [Nationwide Mut. Ins. Co. v. Ferrin (1986), 21 Ohio St.3d 43], application of the Restatement's contractual choice-of-law provisions to liability insurance cases is no longer a subject of dispute in Ohio").
 {¶ 13} 1 Restatement of the Law 2d, Conflict of Laws (1971), 610, Section 193, Contracts of Fire, Surety or Casualty Insurance, provides:
 {¶ 14} "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in [1 Restatement of the Law 2d, Conflict of Laws (1971), 10, Section 6] to the transaction and the parties, in which event the local law of the other state will be applied." See, also, 1 Restatement of the Law 2d, Conflict of Laws (1971), 10, Section 6.[1]
 {¶ 15} Comment a to Section 193 provides that "[t]he rule of this Section applies to contracts of fire insurance, surety insurance and the various kinds of casualty insurance, such as theft insurance, liability insurance, collision insurance, workmen's compensation insurance and fidelity insurance." Id. at 610. Moreover, Comment a further provides that in the case where there is no principal location of the insured risk, such as ships, trucks, airplanes and railroad cars that may move from state to state, "the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of [1 Restatement of the Law 2d, Conflict of Laws (1971), 575, Section 188]. As to multiple risk policies, see Comment f."[2]
 {¶ 16} Our first inquiry is to determine what is the "insured risk" in the present insurance contract. Here, if Westglen manufactured its products in California, as plaintiff contends, then Westglen's products would appear to have nationwide distribution based on the fact plaintiff was injured in Ohio while using a Westglen-manufactured product. Therefore, assuming nationwide distribution of Westglen's products, no state can be regarded as the principal location of the insured risk, if the insured risk is understood to be potential liability from a Westglen-manufactured product. Moreover, because the policy insures against the risk of claims being made against Westglen and, under the insurance policy, Admiral agrees to pay expenses it incurs that are associated with defense of a claim and reasonable expenses incurred by its insured in defense of a claim or suit (Exhibit 6), it would appear this view of "insured risk" is supported by the policy's terms and, therefore, the location of the risk plays little role in the determination of which law to apply. See Babcock Wilcox Co. v. Arkwright-Boston Mfg. Mut. Ins. Co. (N.D.Ohio. 1992), 867 F. Supp. 573,579-580 (discussion of location of insured risk).
 {¶ 17} Alternatively, "insured risk" under the insurance contract conceivably could pertain to the risk of loss to Westglen itself, i.e., the risk of depletion of Westglen's assets as a result of liability for claims made against it. Under this view, if California were the principal location of Westglen's assets, California possibly could be considered the principal location of the insured risk and, therefore, the location of the risk arguably would play a bigger role. However, plaintiff provides no evidence of the kind required by Civ.R. 56 to support his assertion that Westglen is a California corporation with its principal location in California, except for a copy of the insurance policy that indicates 2538 E. 115th, Los Angeles, California, as a mailing address. See, also, Additional Insured Endorsement (designation of FC Commercial Corporation of Glendale, California, as an additional insured) (Exhibit 6). See Babcock Wilcox Co., supra, at 579 (discussion of location of insured risk).
 {¶ 18} Consequently, given these facts and circumstances, we conclude the location of the insured risk appears to play little role in the determination of the applicable law. Therefore, as directed by Comment a of Section 193, we turn our attention to Section 188 of 1 Restatement of the Law 2d, Conflict of Laws (1971)[3] for guidance.
 {¶ 19} Section 188 was expressly adopted by the Ohio Supreme Court in Gries Sports Ent., Inc. v. Modell (1984), 15 Ohio St.3d 284, syllabus, certiorari denied (1985), 473 U.S. 906, 105 S.Ct. 3530. In Gries Sports Enterprises Inc., the court held:
 {¶ 20} "In the absence of an effective choice of law by the parties, the contacts to be taken into account to determine the law applicable to an issue include:
 {¶ 21} "(a) the place of contracting,
 {¶ 22} "(b) the place of negotiation of the contract,
 {¶ 23} "(c) the place of performance,
 {¶ 24} "(d) the location of the subject matter of the contract, and
 {¶ 25} "(e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Id.
 {¶ 26} Here, plaintiff asserts Westglen was incorporated in California; Westglen was domiciled and resided in California; the Westglen meat-grinding machine that injured plaintiff was manufactured in California; and the insurance policy at issue was negotiated and performed in California. Therefore, according to plaintiff, applying Ohio precedent, California law should govern this dispute.
 {¶ 27} We acknowledge the insurance policy does contain a California disclosure notice that indicates Admiral was not licensed by the state of California and a California service of suit endorsement. Therefore, by inference, California has some relationship to the contracting parties. However, we do not find any evidence of the kind required by Civ.R. 56 to support plaintiff's contention that Westglen was domiciled and incorporated in California, and the meat-grinding machine was manufactured in California. Nor is there evidence of the kind required by Civ.R. 56 that the policy necessarily was negotiated and contracted in California. Consequently, we find unpersuasive plaintiff's argument that, applying Section 188, California law should apply. Accordingly, considering the principles of Section 6 of 1 Restatement of the Law 2d, Conflict of Laws (1971) in conjunction with Section 188, we conclude, under the facts and circumstances of this case, Ohio law should govern this matter.
 {¶ 28} Moreover, as will be discussed more fully infra, even if California law be applied, because the insurance contract is not ambiguous, we find the outcome under either Ohio or California law would be the same.
 {¶ 29} In this case, the insurance policy expressly states it provides "claims-made" coverage as evidenced by the following:
 {¶ 30} "COMMERCIAL GENERAL LIABILITY COVERAGE FORM
 {¶ 31} "COVERAGES A. AND B. PROVIDE CLAIMS-MADE COVERAGE."
(Exhibit 6 at 1.)
 {¶ 32} "Under a claims-made policy, coverage exists only when the insured presents a claim to the insurer within the policy period, or an extended period as allowed by the policy." Asp v. Ohio Med. Transp., Inc. (June 28, 2001), Franklin App. No. 00AP-958. Compare with Homestead Ins. Co. v. Am. Empire Surplus Lines Ins. Co. (1996), 44 Cal.App.4th 1297,1303, 52 Cal.Rptr.2d 268, quoting Chamberlin v. Smith (1977),72 Cal.App.3d 835, 845, fn. 5, 140 Cal.Rptr. 493 ("`[a] "claims made" policy is one whereby the carrier agrees to assume liability for any errors, including those made prior to the inception of the policy[,] as long as a claim is made during the policy period'").
 {¶ 33} "When confronted with an insurance contract, a court applies the clear and unambiguous terms of the contract, as written, without judicial interpretation. * * * An insurance contract should be read as a whole and each word given its appropriate meaning." Asp, supra. Moreover, "[i]n insurance policies, as in other contracts, courts should give words and phrases their plain and ordinary meaning unless something in the contract indicates a contrary intention." Equity Diamond Brokers, Inc. v. Transnational Ins. Co., 151 Ohio App.3d 747,2003-Ohio-1024, at ¶ 10, citing Olmstead v. Lumbermens Mut. Ins. Co. (1970), 22 Ohio St.2d 212, 216; Nationwide Ins. Co. v. Tobler (1992), 80 Ohio App.3d 560, 564, jurisdictional motion overruled,65 Ohio St.3d 1444. Compare with Manneck v. Lawyers Title Ins. Corp. (1994), 28 Cal.App.4th 1294, 1301-1302, 33 Cal.Rptr.2d 771 ("[I]t is well settled that the words in an insurance policy are to be interpreted according to the plain meaning which a layman, not an attorney or insurance expert, would ordinarily attach to the words. * * * `Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists'").
 {¶ 34} Here, the insurance policy expressly states the insurance policy will provide claims-made coverage. Therefore, a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties leads us to conclude the insurance policy was a claims-made policy.
 {¶ 35} Furthermore, the fact that the policy contains an extended period within which to file a claim does not necessarily render the policy an "occurrence" policy.[4] See Asp, supra ("[u]nder a claims-made policy, coverage exists only when the insured presents a claim to the insurer within the policy period, or an extended period as allowed by the policy"). (Emphasis added.) Contra Ballow v. PHICO Ins. Co. (Colo. 1993),875 P.2d 1354, 1357 (finding "[i]n effect [extended reporting period] coverage turns claims-made coverage into occurrence coverage") (footnote omitted); 7 Russ Segalla, Couch on Insurance (3 Ed. 1997) 102-76 to 102-77, Section 102:26 (extended reporting period coverage in effect turns claims-made coverage into occurrence coverage) (footnote omitted).
 {¶ 36} Therefore, following this court's precedent, we find unpersuasive plaintiff's contention the claims-made policy necessarily should be construed as an "occurrence" policy.
 {¶ 37} Plaintiff next asserts that, even assuming the insurance policy is unambiguously a claims-made policy, the term "policy period" is undefined in the policy and this, in conjunction with provisions that provide for a "Basic Extended Reporting Period" and a "Supplemental Extended Reporting Period," render the insurance contract ambiguous.
 {¶ 38} "`Contractual language is "ambiguous" only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" Covington v. Lucia, 151 Ohio App.3d 409,2003-Ohio-346, at ¶ 18, appeal not allowed, 99 Ohio St.3d 1435,2003-Ohio-2902, citing Potti v. Duramed Pharmaceuticals, Inc. (C.A. 6, 1991), 938 F.2d 641, 647. Compare with Safeco Ins. Co. of Am. v. Robert S. (2001), 26 Cal.4th 758, 763, 110 Cal.Rptr.2d 844, 28 P.3d 889 ("[a] policy provision is ambiguous when it can have two or more reasonable constructions"). Moreover, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." King v. Nationwide Ins. Co. (1988), 35 Ohio St.3d 208, syllabus. Compare with Robert S., supra, at 763, quoting Kazi v. State Farm Fire Cas. Co. (2001), 24 Cal.4th 871, 879, 103 Cal.Rptr.2d 1,15 P.3d 223 ("`[a]ny ambiguous terms are resolved in the insureds' favor, consistent with the insureds' reasonable expectations'").
 {¶ 39} Here, the term "policy period" is expressly defined in the common policy declarations as extending from January 1, 1997 to January 1, 1998. Furthermore, the policy also expressly provides, under the commercial liability coverage declarations, that coverage related to "bodily injury" or "personal injury" does not apply before the retroactive date of January 1, 1996. Therefore, plaintiff's assertions the term "policy period" is undefined is without merit.
 {¶ 40} Plaintiff also asserts the policy's provisions for "Basic Extended Reporting Period" and "Supplemental Extended Reporting Period" create ambiguity and suggest the "policy period" is a multi-year period.
 {¶ 41} "SECTION V — EXTENDED REPORTING PERIODS" of the general commercial liability coverage provides,
 {¶ 42} "3. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:
 {¶ 43} "a. Five years with respect to claims because of `bodily injury' and `property damage' arising out of an `occurrence' reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV);
 {¶ 44} "b. Five years with respect to claims because of `personal injury' and `advertising injury' arising out of an offense reported to us, not later than 60 days after the end of the policy period, in accordance with paragraph 2.a. of the DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT Condition in COMMERCIAL GENERAL LIABILITY CONDITIONS (Section IV); and
 {¶ 45} "c. Sixty days with respect to claims arising from `occurrences' or offenses not previously reported to us." (Exhibit 6 at 12.) See, also, Section V(1)(a) (extended reporting period coverage provided if policy is cancelled).
 {¶ 46} Here, the term "policy period" and the provision for a "Basic Extended Reporting Period" are conceptually distinct. The "policy period" as defined earlier in the policy extended from January 1, 1997 to January 1, 1998, with a retroactive period extending to January 1, 1996. The "Basic Extended Reporting Period" extended for five years with a requirement that occurrences related to bodily or personal injury be reported no later than 60 days after the end of the policy period, which in this case was April 7, 1997, the date both parties agree the insurance policy was cancelled. According to the policy's express terms, the "Basic Extended Reporting Period" does not enlarge the effective dates of the policy period per se, as defined earlier in the policy; rather, the "Basic Extended Reporting Period" enlarges the reporting period in which a claim can be made, with the end of the policy period as a reference point. See Farmers' Natl. Bank v. Delaware Ins. Co. (1911), 83 Ohio St. 309, 310, paragraph six of the syllabus ("[i]n the construction of a contract courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain"); Arnett v. Midwestern Ent., Inc. (1994), 95 Ohio App.3d 429, 434 ("[a] court must give effect to all the words of a written document"). Compare with Bleecher v. Conte (1981),29 Cal.3d 345, 350, 213 Cal.Rptr. 852, 698 P.2d 1154 ("if a contract is capable of two constructions, the court must choose that interpretation which will make the contract legally binding if it can be so construed without violating the intention of the parties").
 {¶ 47} Thus, we find plaintiff's contention the "Basic Extended Reporting Period" provision creates ambiguity and suggests the term "policy period" can be construed to be a multi-year period to be unpersuasive. See Yeager v. Pacific Mut. Life Ins. Co. (1956),166 Ohio St. 71, paragraph two of the syllabus ("[a]n insurance policy constitutes a contract, its terms must be given a reasonable construction, and an ambiguity which is created by giving a strained or unnatural meaning to phrases by mere casuistry does not constitute an `ambiguity' requiring construction"). Compare with Manneck, supra, at 1302, quoting Equitable Life Assur. Soc. of the United States v. Berry (1989), 212 Cal.App.3d 832, 839, 260 Cal.Rptr. 819 ("`[c]ourts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists'").
 {¶ 48} Furthermore, because Admiral was not informed of plaintiff's injury until April 23, 1999 (Schiavo Depo. at 11), more than 60 days after the undisputed policy's cancellation in April 1997, under the policy's express terms, plaintiff's claim was not entitled to coverage under the "Basic Extended Reporting Period" provision.
 {¶ 49} Plaintiff's contention that language in the "Supplemental Extended Reporting Period" creates ambiguity is also not well-taken for similar reasons.
 {¶ 50} Under "SECTION V — EXTENDED REPORTING PERIODS":
 {¶ 51} "5. A Supplemental Extended Reporting Period of unlimited duration is available, but only by an endorsement and for an extra charge. This supplemental period starts when the Basic Extended Reporting Period, set forth in paragraph 3, above, ends.
 {¶ 52} "You must give us a written request for the endorsement within 60 days after the end of the policy period. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due." (Exhibit 6 at 12.)
 {¶ 53} As the terms "policy period" and "Basic Extended Reporting Period" are distinct and separate concepts, so also is the policy's "Supplemental Extended Reporting Period" provision conceptually distinct. According to the unambiguous terms of the insurance policy, "Supplemental Reporting Period" is of unlimited duration provided a written request for the endorsement was made at the end of the policy period. Here, there is no evidence Westglen exercised its option for "Supplemental Extended Reporting Period" coverage. Furthermore, plaintiff's argument that language in the "Supplemental Extended Reporting Period" provision renders the term "policy period" ambiguous invites us to obfuscate the distinction between the distinct and definite concepts of "policy period" and "supplemental reporting period," thereby improperly engaging in strained interpretation to create an ambiguity where none exists. See Yeager, supra; Manneck, supra.
 {¶ 54} Accordingly, plaintiff's assertion that policy language contained in the "Supplemental Extended Reporting Period" provision creates ambiguity and suggests the "policy period" is a multi-year period also is without merit.
 {¶ 55} Also unavailing is plaintiff's reliance on Amato v. Mercury Cas. Co. (1997), 53 Cal.App.4th 825, Cal.Rptr.2d 909, to support his contention that Admiral's alleged breach of its duty to defend Westglen should result in coverage for plaintiff.
 {¶ 56} Amato concerned the amount of damages an insured, Anthony Amato, who ultimately prevailed on the issue of coverage, could recover against an insurer, Mercury Casualty Company, that tortiously breached a duty to defend Amato in an action brought by Jacqueline Sutton. See Amato at 828 ("[t]his case presents a question of the damages recoverable when an insurer breached its duty to defend the insured but ultimately prevailed on the issue of coverage").
 {¶ 57} The Amato court held that "where an insurer tortiously breaches the duty to defend and the insured suffers a default judgment because the insured is unable to defend, the insurer is liable for the default judgment, which is a proximate result of its wrongful refusal to defend." Id. at 829.
 {¶ 58} Here, under the policy at issue, Westglen was the insured, not plaintiff. Therefore, if California law were applied in this case, Westglen arguably might have a right to recover damages against Admiral in the amount of the default judgment.
 {¶ 59} Amato, however, did not create an independent right of recovery for a party that was ultimately denied coverage. Indeed the Amato court observed:
 {¶ 60} "* * * It may seem quixotic that Sutton is denied recovery on her direct action on the policy but Amato is entitled to recover for Mercury's failure to defend. However, the distinction is explainable by the difference in the nature of their respective claims. Sutton's claim depends on the contract terms of the coverage provisions of the insurance policy, whereas Amato's claims is based on the application of the judicially expanded duty to defend. * * *" Id. at 839.
 {¶ 61} Here, plaintiff's claims of bodily and personal injury arising from an accident involving a Westglen manufactured meat-grinder were not timely reported to Admiral as required by the unambiguous terms of the insurance policy. Therefore, under the policy, plaintiff was not entitled to recovery.
 {¶ 62} Consequently, plaintiff's reliance on Amato to support his contention that Admiral's alleged breach of its duty to defend Westglen should result in coverage for plaintiff is without merit.
 {¶ 63} Accordingly, construing the evidence most strongly in plaintiff's favor and having determined plaintiff's assignments of error are without merit, both of plaintiff's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BROWN and KLATT, JJ., concur.
[1] 1 Restatement of the Law 2d, Conflict of Laws (1971), 10, Section 6, Choice-of-Law Principles, provides:
"(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
"(a) the needs of the interstate and international systems,
"(b) the relevant policies of the forum,
"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
"(d) the protection of justified expectations,
"(e) the basic policies underlying the particular field of law,
"(f) certainty, predictability and uniformity of result, and
"(g) ease in the determination and application of the law to be applied."
[2] Comment f to Section 193 notes:
"A special problem is presented by multiple risk policies which insure against risks located in several states. A single policy may, for example, insure dwelling houses located in states X, Y and Z. * * * Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk.* * *" 1 Restatement of the Law 2d, Conflict of Laws (1971), at 613-614.
[3] 1 Restatement of the Law 2d, Conflict of Laws (1971), 575, Section 188, provides:
"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
"(a) the place of contracting,
"(b) the place of negotiation of the contract,
"(c) the place of performance,
"(d) the location of the subject matter of the contract, and
"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.
"These contacts are to be evaluated according to their relative importance with respect to the particular issue.
"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189-199 and 203."
[4] "`An occurrence policy provides coverage for acts done during the policy period regardless of when the claim is brought.'" Mueller v. Taylor Rental Ctr. (1995), 106 Ohio App.3d 806, 810, quoting United States v. A.C. Strip (C.A. 6, 1989), 868 F.2d 181, 184. Compare with Homestead Ins. Co., supra, at 1303, quoting Chamberlin, supra, at 845, fn. 5 ("`an "occurrence" policy provides coverage for any acts or omissions that arise during the policy period[,] even though the claim is made after the policy has expired'").