[No. B076833. Second Dist., Div. Two. Sept. 8, 1994.]

PAUL A. MANNECK et al., Plaintiffs and Appellants, v.
LAWYERS TITLE INSURANCE CORPORATION et al., Defendants and
Respondents.

**COUNSEL**

Joseph Liebman for Plaintiffs and Appellants.

Billet & Kaplan, Terry S. Kaplan, Terrance R. McKnight and Jordan Trachtenberg for Defendants and Respondents.

## OPINION

**BOREN, P. J.**—This is an appeal from a judgment finding in favor of defendant in an action for declaratory relief, following a nonjury trial. The trial court found, inter alia, that defendant Lawyers Title Insurance Corporation[1] had no obligation to prosecute an action on behalf of plaintiffs Paul A. Manneck and Jennifer H. Manneck-Regina or to indemnify them for any losses since the alleged defects in plaintiffs' title are not within the coverage of the title insurance policy issued by defendant. As an obvious consequence of the declaratory relief finding, the judgment also entailed the dismissal with prejudice of plaintiffs' complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing and fiduciary duty, and negligent infliction of emotional distress. Contrary to plaintiffs' contentions, the trial court properly construed the language of the title insurance policy and determined as a matter of law that no coverage existed under the circumstances, and plaintiffs' alleged denial of a jury trial does not warrant a reversal.

### FACTS

On September 19, 1986, plaintiffs purchased for $200,000 a home at 2609 Waverly Drive in the city of Los Angeles. At the time they acquired the home, plaintiffs purchased a policy of title insurance from defendant. In June of 1988, plaintiffs decided to replace a fence on the side of their property and ordered a survey of the property lines. To plaintiffs' dismay, the survey disclosed that virtually everything beyond their backdoor, including their swimming pool, surrounding concrete deck and appurtenant equipment, was constructed on adjoining property not owned by plaintiffs. Plaintiffs then notified defendant of the problem.

Defendant investigated and confirmed that plaintiffs' pool and related structures encroached on the property of the adjacent landowner, the Hartwood Development Company (Hartwood). Hartwood had plans to develop apartments down slope from plaintiffs' property. Defendant explained to the owner of Hartwood that plaintiffs had rights to the property upon which the encroachments sat, based upon adverse possession and prescriptive easement

---

[1]Continental Land Title Company, a subsidiary of Lawyers Title Insurance Corporation, was also sued as a defendant, but the parties herein have treated both as a single entity, and we likewise refer to them as a single defendant.

theories, and also indicated a desire to resolve the situation without the necessity of litigation.

In December of 1988, defendant contacted plaintiffs and in a letter explained the attempt to resolve the encroachment problem with the adjacent property owners. Defendant's letter to plaintiffs also explained as follows: "As far as the coverage under your policy is concerned, your attention is directed to Paragraph 12 of the Covered Title Risks, which states: [¶] 12. You are forced to remove your existing structure other than a boundary wall or fence because: [¶] it extends onto adjoining land or onto any easement [¶] it violates a restriction shown in Schedule B [¶] it violates an existing zoning law [¶] This means that, in the event that you are *forced* to remove your improvements (for example because of a court order requiring you to do so), your policy provides you with coverage. In your case however, there is no such impending removal, thus at this time, there is *technically* no coverage for your claim. Nevertheless, as a courtesy to you, I have been attempting to resolve this matter in the hope that we could prevent it from mushrooming into long and costly litigation. Also, at this time, it really can't be determined whether or not the owners of the adjacent property will try to force you to remove your improvements." (Italics in original.)

In June of 1989, plaintiffs engaged an attorney to represent them, and plaintiffs' counsel then demanded that defendant immediately institute legal action against Hartwood regarding the improvements situated on the adjacent property. Defendant explained that Hartwood had assured defendant that although it had "plans" for development of its property which would have cut into the hillside and destroyed plaintiffs' pool, Hartwood would not go forward with any construction affecting plaintiffs' property without first resolving the situation. Defendant also assured plaintiffs that it would immediately act to take all steps necessary to preserve the status quo in the event of forced removal of any of plaintiffs' improvements encroaching on adjacent property.[2] In ensuing correspondence between plaintiffs' counsel and defendant, defendant repeatedly explained that coverage arose only upon forced removal of certain improvements, and that the policy does not obligate the title insurance company to acquire any land outside the property specifically insured, meaning the lot and tract as described in the maps in the office of the county recorder and as described in the plaintiffs' grant deed.

In April of 1990, plaintiffs filed their complaint against defendant alleging breach of contract and related causes of action. Meanwhile, as negotiations

---

[2]The trial court's statement of decision emphasized that plaintiffs "both admitted, in their deposition testimony read into the record herein, that no one ever forced the removal of their improvements."

between Hartwood and defendant continued, Hartwood filed bankruptcy. After Hartwood lost the property in question to foreclosure, in April of 1992 defendant sued the new owner of the property on behalf of plaintiffs to establish adverse possession or a prescriptive easement with regard to the property upon which the improvements encroached.

In November of 1992, plaintiffs sold their property for $235,000. The grant deed from the plaintiffs to the new party described the property with the same lot and tract description used to describe the property conveyed to plaintiffs in 1986 from the predecessors in interest, and was the same property description used in plaintiffs' title insurance policy. On March 22, 1993, a judgment by stipulation was entered in the action filed by defendant on behalf of plaintiffs (and their then grantee and successor in interest to the property), which provided that fee title to the land under the improvements be conveyed to plaintiffs' grantee.

In the present case, the trial court bifurcated proceedings. The court tried without a jury issues relating to coverage of the title insurance policy, as raised in defendant's declaratory relief action, and prior to any possible trial with a jury of breach of contract, bad faith and related issues raised in plaintiffs' complaint. On April 28, 1993, the court filed its detailed statement of decision in the present case and its judgment declaring, inter alia, that the situation regarding plaintiffs' encroachments did not constitute a defect within the coverage of the policy of title insurance issued by defendant, and dismissing plaintiffs' complaint with prejudice. Plaintiffs appeal.

## DISCUSSION

Plaintiffs raise two principal contentions. First, they claim that the trial court's determination of the declaratory relief action wrongfully deprived them of a jury trial regarding the meaning and interpretation of the title insurance policy in question, which raises issues of both the intent and reasonable expectations of the parties and claims of waiver or estoppel from the insurer's statements and conduct. Second, plaintiffs urge that it is the duty of an insurer to act when the potential for the occurrence of a covered risk becomes known, and that the "forced removal" coverage in the title insurance policy was triggered even prior to the time the covered defect became a reality by a forced removal of the insured's structures. We hold that while in this class of case a jury trial is a matter of right, the circumstances here do not justify a reversal since, as a matter of law, plaintiffs are not covered by the terms of their policy.

## I. *Declaratory Judgment Action and Jury Trial*

"The mere fact that an action is one seeking declaratory relief, characterized generally in many decisions as being 'equitable,' does not

answer the question of the right to a jury trial; the proper inquiry is the sometimes difficult one whether the *issues* are legal or equitable in nature. [Citations.] [¶] . . . [¶] It is clear that an action by an insurance company against its putative insured, seeking a declaration that no coverage exists, is one in which a jury trial is a matter of right, since the declaratory relief action has been substituted for an action at law for breach of contract. [Citations.] . . . [¶] . . . Therefore, in the abstract, [plaintiffs were] entitled to a jury trial, having made proper demand therefor." (*Interinsurance Exchange* v. *Savior* (1975) 51 Cal.App.3d 691, 694 [124 Cal.Rptr. 239]; see *Patterson* v. *Insurance Co. of North America* (1970) 6 Cal.App.3d 310, 315-316 [85 Cal.Rptr. 665].)

Nonetheless, there is no prejudicial error or miscarriage of justice warranting a new trial because ". . . it is apparent that there were no real issues to present to the jury." (*Interinsurance Exchange* v. *Savior, supra,* 51 Cal.App.3d at p. 695.) There were no issues to present to the jury because, as discussed hereinafter, the trial court properly concluded that there was no ambiguity in the contract, and that the only possible coverage related to the forced removal of improvements, which was inapplicable because no such forced removal occurred, and that the evidence adduced at the court trial on the declaratory relief action revealed no issues presented regarding alleged waiver or estoppel claims.

As the court aptly explained in *Equitable Life Assurance Society* v. *Berry* (1989) 212 Cal.App.3d 832 [260 Cal.Rptr. 819], "[T]he jury issue is a red herring. . . . [T]he interpretation of a written instrument is essentially a judicial function. Where the trial court concludes, after considering extrinsic evidence, that a writing is not reasonably susceptible of a construction urged, there is no issue to be submitted to a jury. Thus, even if bifurcation had not been ordered, the trial court would have been required to hear the evidence bearing on the meaning of the instrument out of the presence of the jury, and the conclusion that the court arrived at would have terminated the case. Only if the court had made a contrary finding on the question of ambiguity would it have submitted the credibility of any conflicting evidence to the jury. Thus, . . . the determinative issue in this case is the court's finding that the policy does not lend itself to the construction urged by the plaintiff[s]." (*Id.* at p. 836.)

In view of plaintiffs' admission that no one ever forced removal of their improvements and the trial court's proper determination that the policy requires forced removal, as discussed hereinafter, if a jury had been present

and a motion for a directed verdict made, it would have been granted.[3] As in *Interinsurance Exchange* v. *Savior, supra,* 51 Cal.App.3d 691, where there erroneously was no jury in a declaratory relief action but the facts before the court revealed no insurance coverage for the car driven by the putative insured, "Under the circumstances, [plaintiffs have] no cause to complain that the case was tried without a jury." (*Id.* at p. 695.)

## II. *Interpretation of the Title Insurance Contract Provisions*

■ As previously noted, the covered risks in plaintiffs' title insurance policy include situations where "You are forced to remove your existing structure—other than a boundary wall or a fence—because . . . it extends onto adjoining land . . . ." Plaintiffs also point to other language in the policy to the effect that as soon as the insurer is aware that "anyone claims a right against [the] insured title," the insurer "can" undertake "one or more" of several courses of action set forth in the policy, and that the insurer will then "remove the claim . . . within a reasonable time." Plaintiffs further place critical but unfounded reliance upon *Jarchow* v. *Transamerica Title Ins. Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470] to conclude that pursuant to the policy provisions in the present case and the implied covenant of good faith and fair dealing, the defendant bore a duty to defend its insured as soon as it ascertained facts which gave rise to the mere potential of liability under the policy. However, neither the language of plaintiffs' policy nor the holding in *Jarchow* require any duty of defendant to act when made aware of the mere potential, rather than the present existence, of the forced removal of plaintiffs' improvements.

■ Because the determination whether an ambiguity exists in a contract is one of law, we are not bound by the trial court's ruling and determine the matter de novo. (*Equitable Life Assurance Society* v. *Berry, supra,* 212 Cal.App.3d at p. 840.) ■ It is well settled that the words in an insurance policy are to be interpreted according to the plain meaning which a layman, not an attorney or insurance expert, would ordinarily attach to the words. (*Id.*

[3]We note that the trial court aptly inquired prior to the nonjury trial on defendant's declaratory relief action whether defendant had made a motion for summary judgment. Counsel for defendant explained that no summary judgment motion was filed because "We substituted into this case less than two months ago, Your Honor, [and] it was too late at that time to file a motion."

If defendant had filed a motion for summary judgment, it is likely that the case would have been resolved against plaintiffs at that stage in the proceedings. Based upon the evidence adduced at the nonjury trial, plaintiffs failed to prove the existence of even the potential for coverage, while defendant established the absence of any such potential and proved that the underlying claim cannot fall within policy coverage, thereby warranting summary judgment for defendant, had such motion been made. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

at p. 839.) "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." (*Ibid.*) Only if policy provisions are susceptible to alternative readings are doubts in interpretation resolved against the insurer. (*Paramount Properties Co.* v. *Transamerica Title Ins. Co.* (1970) 1 Cal.3d 562, 569 [83 Cal.Rptr. 394, 463 P.2d 746].) Although insurance contract provisions relating to exclusions or exceptions from the performance of the basic, underlying obligations are construed strictly against the insurer and liberally in favor of the insured, courts may not put a strained or unnatural construction on the terms of a policy to manufacture an uncertainty or ambiguity where none reasonably exists. (*Ibid.*; *Callison* v. *Continental Cas. Co.* (1963) 221 Cal.App.2d 363, 366, 369-370 [34 Cal.Rptr. 444].)

■ Viewed in light of such principles of interpretation, as the trial court properly observed, the relevant provisions in the title insurance policy are "clear and explicit." The clause in the policy pertaining to forced removal coverage only comes into play if in fact there is a forced removal of the insured's structures which encroach on the property of another. Under plaintiffs' policy of title insurance and the facts in the present case, there was no coverage until a forced removal, and the insurer could have in good faith waited to act until, for example, a court order requiring removal or the imminent destruction of the encroaching improvements by bulldozers.

Plaintiffs' focus on language in the insurance policy pertaining to circumstances where "anyone claims a right against [the] insured title" is irrelevant to the factual situation here. There never was any actual or even potential challenge to plaintiffs' title. Plaintiffs' possession of title to the property described by lot and tract in their deed and referred to in their title insurance policy was never at issue. Indeed, the problem is that plaintiffs desired to obtain a greater amount of land than they purchased and which had been accurately described in their deed, albeit to satisfy their reasonable expectations at the time of purchase. Plaintiffs thus have confused title with the physical condition or value of the property they purchased. (See *Hocking* v. *Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 652 [234 P.2d 625, 40 A.L.R.2d 1238].)

Further indicative of both the lack of ambiguity in the title insurance policy provisions and plaintiffs' lack of coverage is an exclusion clause not addressed by plaintiffs in their briefs. One of the exclusion clauses in the policy provides: "[Y]ou are not insured against loss . . . from . . . any facts about the land which a correct survey would disclose and which are not shown by the public records. This does not limit the forced removal coverage [described in another section of the policy]." Accordingly, the plain

language of the title insurance policy provides coverage for the unmarketability of title, as described by lot and tract number, and does not apply to any matters which a correct survey would have disclosed and which are not shown by public record, such as the encroachments in the present case. Only forced removal coverage is provided for such encroachments, and no such forced removal occurred here.

Moreover, plaintiffs' reliance on *Jarchow v. Transamerica Title Ins. Co., supra,* 48 Cal.App.3d 917, is misplaced. In *Jarchow,* where a neighbor was asserting an easement for ingress and egress across the insured's parcel, there was a claim against the insured's title. Plaintiffs' title is not in issue in the present case. Also, the controlling policy language in *Jarchow* is markedly different than the policy language in the present case. The policy language in *Jarchow* required the insurer "without undue delay" to take "such action as may be appropriate to establish the title" with respect to an alleged encumbrance insured against. (*Id.* at p. 941, italics omitted.) There simply is no similar language in plaintiffs' policy. The focus in *Jarchow* on the insurer's obligation in the policy to protect "the integrity of the insured's title" and the mere "potential" of "possible liability" as triggering the insurer's duty to defend in a quiet title action (*id.* at p. 942, italics omitted) is thus of no relevance to the present case.

■ Also, contrary to plaintiffs' assertion, coverage under an insurance policy cannot be established by estoppel or waiver. " ' "The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom, and the application of the doctrines in this respect is therefore to be distinguished from the waiver of, or estoppel to assert, grounds of forfeiture. . . ." ' " (*Aetna Casualty & Surety Co. v. Richmond* (1977) 76 Cal.App.3d 645, 653 [143 Cal.Rptr. 75].) Accordingly, plaintiffs' reliance on the fact that defendant's staff attorney who handled plaintiffs' claim testified that he never reserved rights or denied coverage and that he acted consistent with the contractual duties of the insurer in the event of a claim for which the defendant might have been liable, not only fails to establish the prerequisite element of reliance for the doctrine of estoppel (see *Equitable Life Assurance Society v. Berry, supra,* 212 Cal.App.3d at p. 842), but most significantly is of no consequence because of the inapplicability of the doctrines of estoppel or waiver.

■ Finally, to hold that the insurer here was required to act under notions of an implied covenant of good faith, even in the absence of forced removal of the improvements encroaching on the adjacent property, would

improperly add a new obligation to the title insurance policy. (See *Carma Developers (Cal.), Inc.* v. *Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 374-376 [6 Cal.Rptr.2d 467, 826 P.2d 710].) It is not the role of the courts effectively to make new agreements for the parties by creating coverage where none was intended by the clear and explicit language of the contract. (See *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807, 821-822 [274 Cal.Rptr. 820, 799 P.2d 1253].)

DISPOSITION

The judgment is affirmed.

Gates, J., and Fukuto, J., concurred.

A petition for a rehearing was denied September 28, 1994, and appellants' petition for review by the Supreme Court was denied November 23, 1994. Kennard, J., was of the opinion that the petition should be granted.