DOMINIUM MANAGEMENT SERVICES, INC., Plaintiff,

v.

NATIONWIDE HOUSING GROUP, Nationwide Development Group, LP and Pinnacle Group Realty Management Company, Defendants.

Civil No. 4–96–849 (DSD/FLN).

United States District Court, D. Minnesota, Fourth Division.

April 30, 1998.

·Joseph W. Hammell, Lucy A. Dalglish, and Dorsey & Whitney, Minneapolis, MN, Alan J. Gordee, Stephen R. Thames, and Allen, Matkins, Leck, Gamble & Mallory, Irvine, CA, for Pinnacle Group Realty Management Co.

## ORDER

DOTY, District Judge.

This matter is before the court upon the motion of Nationwide Housing Group and Nationwide Development Group, L.P. (collectively referred to as "NHG") for judgment as a matter of law or, in the alternative, for new trial or remittitur. This matter is also before the court upon the motion of Pinnacle Realty Management Company ("Pinnacle") for post-trial relief including amendment of the judgment and entry of declaratory judgment. In the event that the court grants any portion of NHG's post-trial motions, Pinnacle also requests a new trial on Pinnacle's claims against Dominium Management Services, Inc. ("Dominium"). Based on a review of the file, record and proceedings, the court grants in part and denies in part NHG's motion for judgment as a matter of law, conditionally grants NHG's motion for new trial, grants Pinnacle's motion for amendment of the judgment, and denies Pinnacle's motions for declaratory judgment and new trial.

## BACKGROUND [1]

Dominium is a property management company that manages properties for a fee and also develops and owns interests in real estate projects. Nationwide Development Group is a California limited partnership that was the general partner of many other limited partnerships. Nationwide Housing Group is a corporation and the general partner of Nationwide Development Group. NHG was controlled by three individuals who were also officers: Michael Weyrick, President ("Weyrick"); David Slajchert, Vice President ("Slajchert"); and Laura Lynch, Executive Vice President ("Lynch"). Pinnacle is a property management company. Pinnacle's President is Stan Harrelson.

Norman J. Baer, Joseph W. Anthony, Douglas L. Elsass and Fruth & Anthony, Minneapolis, MN, for Dominium Management Services, Inc.

Steven E. Rau, Paul M. Floyd, and Rau & Floyd, Robert M. Smith, Smith Law Office, Minneapolis, MN for Nationwide Housing Group.

1. The background section is taken directly, in large part, from the stipulation of facts which was jointly submitted by the parties prior to the trial in this matter.

This action involves a dispute which arose in 1996. NHG was the general partner and property manager of approximately 40 real estate limited partnerships which were formed to own and operate apartment projects that would qualify for federal tax credits ("Portfolio Partnerships"). The Portfolio Partnerships owned more than 80 apartment buildings which together consisted of approximately 5,300 apartment units. Individuals and corporations invested in the partnerships by purchasing partnership units and becoming limited partners. NHG also formed two limited partnerships for the purpose of investing in the Portfolio Partnerships. The two partnerships were called the NHG Institutional Fund Limited Partnership ("Institutional Fund") and the NHG Opportunity Fund Limited Partnership ("Opportunity Fund"). The investors in the Institutional Fund and the Opportunity Fund were exclusively corporate and institutional investors. The Institutional Fund owned a majority interest in 15 of the Portfolio Partnerships. Those 15 partnerships owned 43 apartment projects totaling 2,830 apartments ("Institutional Fund Portfolio").

By 1996, NHG was facing significant financial and operational difficulties. It had debts in excess of its assets, and was unable to meet its operational expenses. To meet some of its operational difficulties, NHG contracted for Dominium to manage almost all of the properties owned by the Portfolio Partnerships. The contract was for a period of one year, from May 1, 1996 through April 30, 1997. To meet its immediate cash needs, NHG had to borrow funds. On May 20, 1996, NHG borrowed $50,000 from Dominium. In exchange for the loan, Weyrick, Slajchert, and Lynch signed a promissory note, promising to repay Dominium the $50,000 plus interest. On June 14, 1996, NHG borrowed an additional $100,000 from Dominium. Weyrick, Slajchert, and Lynch signed another promissory note to repay the $100,000 plus interest. NHG and its principals entered into security agreements with Dominium which granted Dominium a security interest in all of NHG's assets and interests, including its interests in the Portfolio Partnerships. The promissory notes were due on August 15, 1996. On August 13, 1996, Dominium agreed to extend the repayment on the notes until August 22, 1996.

The Institutional Fund investors formed an advisory group to exercise greater oversight and direction over NHG in the management of the Institutional Fund Portfolio. Some of the Institutional Fund investors were represented by an attorney named John Simon ("Simon"). Simon and the advisory group were actively involved in the selection of a substitute for NHG as general partner of the Institutional Fund Partnerships.

On August 14, 1996, Dominium made a proposal to NHG to acquire its assets and interest in the Portfolio Partnerships. On August 15, 1996, Pinnacle submitted its own proposal to NHG entitled "Letter of Agreement." NHG did not agree to either of the proposals. On Friday, August 16, 1996, Pinnacle submitted a "Revised Letter of Agreement" to NHG. NHG and each of its principals signed the Revised Letter of Agreement. On Monday, August 19, 1996, representatives from Pinnacle called Lynch at NHG to discuss the preparation of documentation. The Revised Letter of Agreement stated:

> Pinnacle Realty Management Company, or Nominee, (hereinafter referred to as "Pinnacle"), hereby commit to provide to Nationwide Housing Group and Nationwide Development Group, their affiliated entities, and limited partnerships, (hereinafter referred to as "NHG") the sum of Nine Hundred Fifty Thousand Dollars ($950,000).

The Revised Letter of Agreement included four "funding" clauses, a "personal services contract," an "exclusivity" provision, a "confidentiality" provision, and a clause which stated that "time is of the essence."

On Tuesday, August 20, 1996, Dominium delivered a revised proposal to NHG. On the same day, the Institutional Fund's advisory group met with representatives from Pinnacle and Dominium. Harrelson made a presentation on behalf of Pinnacle. Armand Brachman, Dominium's Vice President of Operations, made a presentation on behalf of Dominium. At the end of the meeting, the

advisory group decided that it wanted Dominium as the new general partner of the Institutional Fund Partnerships. On August 21, 1996, the advisory group informed NHG, Dominium, and Pinnacle that it had decided in favor of Dominium.

On August 22, 1996, Pinnacle wire transferred $162,000 to the account of NHG's attorney. The wire transfer was made in connection with the Revised Letter of Agreement. On August 23, 1996, NHG sent a letter to Pinnacle stating in part: "Due to the fact that Pinnacle was unable to perform under the Revised Letter of Agreement dated August 16, 1996[,] between Pinnacle and Nationwide Housing Group, we have elected to pursue other alternatives." NHG returned the $162,000 to Pinnacle. On the same day, NHG and its three principals signed a proposal from Dominium which outlined the terms under which Dominium would acquire NHG's assets and interests and substitute for NHG as the general partner in the Portfolio Partnerships. Between August 23, 1996, and October 16, 1996, NHG and Dominium negotiated and agreed to the specific terms for Dominium to acquire NHG's assets and interests. Since October 1996, Dominium has served as the general partner of almost all of the Portfolio Partnerships and has had responsibility for the operations of the underlying real estate projects.

On August 27, 1996, Dominium filed this action requesting declaratory relief that Dominium has an enforceable contract with NHG to acquire its interests and to become the managing general partner. On August 29, 1996, Pinnacle filed suit in a California state court, moving for a temporary restraining order and preliminary injunction to enjoin NHG from transferring, selling, or disposing of its interests in the limited partnerships, and to enjoin NHG from disposing of its corporate rights, stock, or assets. The California court denied the temporary restraining order and later denied the preliminary injunction.

In October 1996, Pinnacle filed counterclaims against Dominium for declaratory relief, intentional interference with a contractual relationship, and intentional interference with a prospective contractual relationship. Pinnacle also asserted cross-claims against NHG for injunctive relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Pinnacle moved for a temporary restraining order and preliminary injunction, which motions were denied.

In October 1997, Dominium moved for summary judgment against Pinnacle. NHG joined in the motion. Dominium and NHG argued that Pinnacle did not have a valid and enforceable contract with NHG to transfer partnership interests, but merely had an agreement to negotiate a binding contract. Summary judgment was denied.

On February 23, 1998, a jury was impaneled to hear the case. At the conclusion of the seven days of trial testimony and arguments of counsel, the jury deliberated and returned a special verdict on March 5, 1998, in favor of Pinnacle. The jury determined by a preponderance of the evidence that Pinnacle and NHG entered into a valid and enforceable contract in which Pinnacle was to acquire all of NHG's partnership interests and assets, and that NHG breached its contract with Pinnacle. The jury awarded Pinnacle $18,300,000 as fair and adequate compensation for the breach. In addition to filling in the total amount of damages, the jury included its arithmetic in calculating the damages as follows:

> 50% margin
> 5% rate over 10 years
> $1.8 × .50 = $900 = .900
> $900 × 7.11 = 6,399 = 6.4
> A/R 9.3 − 3.3 (institution) = 6.0
> Assets 5.
> 18.300

Having determined that a contract existed between NHG and Pinnacle, the jury did not consider Pinnacle's claims for promissory estoppel and intentional interference with a prospective business relationship. With respect to Pinnacle's claims against Dominium for intentional interference with the contract, the jury determined that Dominium did not intentionally interfere with the contract between NHG and Pinnacle.

NHG moves for judgment as a matter of law or, in the alternative, for a new trial or remittitur. Pinnacle moves for amendment

of the judgment and for entry of a declaratory judgment. In the event that the court grants any portion of NHG's post-trial motions, Pinnacle also requests a new trial on Pinnacle's claims against Dominium Management Services, Inc. ("Dominium").

## DISCUSSION

### A. Motion for Judgment as a Matter of Law

 A proponent of a motion for judgment as a matter of law confronts a difficult standard. In ruling on a motion for judgment as a matter of law, the court considers the evidence in the light most favorable to the nonmoving party, assumes that the jury resolved all conflicts in favor of the nonmoving party, assumes as true all facts which the nonmoving party's evidence tended to prove and gives the nonmoving party all favorable inferences which may reasonably be drawn from proved facts. *Nelson v. Boatmen's Bancshares, Inc.*, 26 F.3d 796, 800 (8th Cir. 1994) (citing *White v. Pence*, 961 F.2d 776, 779 (8th Cir.1992)). " 'Judgment as a matter of law is appropriate only when all of the evidence points in one direction and is susceptible to no reasonable inference that would sustain the position of the nonmoving party.' " *Kehoe v. Anheuser–Busch, Inc.*, 96 F.3d 1095, 1100 (8th Cir.1996) (quoting *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (8th Cir.1996)). A court must deny a motion for judgment as a matter of law if reasonable persons could differ as to the conclusions to be drawn from the evidence. *See, e.g., Parrish v. Immanuel Medical Ctr.*, 92 F.3d 727, 731 (8th Cir.1996) (stating standard). Judgment a matter of law is allowed if " 'the evidence is such that, without weighing the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict.' " *Johnson v. Cowell Steel Structures, Inc.*, 991 F.2d 474, 478 (8th Cir.1993) (quoting *Caudill v. Farmland Industries, Inc.*, 919 F.2d 83, 86 (8th Cir.1990)).

NHG argues that the court should grant judgment as a matter of law in its favor because the Revised Letter of Agreement is inherently ambiguous in that the NHG principals contend that it was a contract for further negotiations and Harrelson contends

that it was a contract for Pinnacle to acquire all of the rights, title and interest in NHG's portfolio. NHG argues that the ambiguities are matters of law which concern the legal construction and interpretation of the Agreement which are matters for the court to resolve and not the jury. Specifically, NHG argues that the Fourth Funding clause requires the court's interpretation and construction and that the only construction under the law is that the Fourth Funding clause required third-party approval, which the undisputed evidence establishes did not occur. Therefore, NHG argues, there was no breach of the contract as a matter of law. In addition, NHG argues that Pinnacle was claiming damages that Triad and First West suffered derivatively and, therefore, Pinnacle was not the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure. Furthermore, NHG asserts that it is entitled to judgment as a matter of law because the jury's award of damages is speculative, conjectural, and unsupported by the evidence presented at trial.

#### 1. Contract interpretation

The jury determined that a contract existed between Pinnacle and NHG in which Pinnacle was to acquire all of NHG's partnership interests and assets. The jury also determined that NHG breached its contract with Pinnacle. NHG argues that the Fourth Funding clause of the Revised Letter of Agreement is a condition requiring third party approval for performance of the Agreement.

 Under California law, the intention of the parties as expressed in the contract is the source of contractual rights and duties. *Pacific Gas and Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641, 644 (1968) (en banc); *Cotran v. Rollins Hudig Hall Intern., Inc.*, 17 Cal.4th 93, 69 Cal.Rptr.2d 900, 948 P.2d 412, 425 (1998) (stating the axiom that contract interpretation is governed by the contracting parties' intent). "A contract must be interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same

is ascertainable and lawful." Cal. Civ.Code § 1636. The judicial function in contract interpretation is well established under California law:

> The interpretation of a written instrument, even though it involves what might properly be called questions of fact, is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. Extrinsic evidence is 'admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible', and it is the instrument itself that must be given effect. It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.

*Parsons v. Bristol Development Co.,* 62 Cal.2d 861, 44 Cal.Rptr. 767, 402 P.2d 839 (1965) (en banc) (citations omitted); *Oceanside 84, Ltd. v. Fidelity Federal Bank,* 56 Cal.App.4th 1441, 66 Cal.Rptr.2d 487, 494 (1997) (discussing entitlement to jury in contract case); *De Guere v. Universal City Studios, Inc.,* 56 Cal.App.4th 482, 65 Cal.Rptr.2d 438, 451 (1997) (quoting *Parsons* ). Thus, if the terms of the contract are ambiguous or uncertain, "determining the contract's terms is a question of fact for the trier of fact (here the jury), based on 'all credible evidence concerning the parties' intentions. . . .' " *See Cotran,* 69 Cal.Rptr.2d 900, 948 P.2d at 425 (citing BAJI No. 10.75 (8th ed.1994)); *see also Schmidt v. Macco Const. Co.,* 119 Cal. App.2d 717, 260 P.2d 230 (1953) (recognizing that when parol evidence is properly admissible and conflicting, the question of interpretation becomes one of fact and not law); *Walsh v. Walsh,* 18 Cal.2d 439, 116 P.2d 62, 65 (1941) (en banc) (recognizing that "when the meaning of the language of a contract is uncertain or doubtful and parol evidence is introduced in aid of its interpretation, the question of its meaning is one of fact").

█ The determination of whether a contract term is ambiguous is a question of law for the court. *See Han v. Mobil Oil Corp.,* 73 F.3d 872, 877 (9th Cir.1995) (applying California law). In determining whether language is ambiguous, the court preliminarily considers all evidence offered to prove the intention of the parties. *Pacific Gas,* 69 Cal. Rptr. 561, 442 P.2d at 644; *see* Cal. Civ.Code § 1856 (discussing consideration of parol evidence). If the language of the contract, in the light of all of the circumstances, is "fairly susceptible of either one of the two interpretations" the language is ambiguous and "extrinsic evidence relevant to prove either of such meanings is admissible." *Id.; Manneck v. Lawyers Title Ins. Corp.,* 28 Cal.App.4th 1294, 33 Cal.Rptr.2d 771, 775 (1994) (recognizing that the decision by the court on the question of ambiguity is determinative of whether a jury issue exists).

█ Under the law of contracts, parties may expressly agree to a term in which "a right or duty is conditional upon the occurrence or nonoccurrence of an act or event." *Platt Pacific, Inc. v. Andelson,* 6 Cal.4th 307, 24 Cal.Rptr.2d 597, 862 P.2d 158, 161–62 (1993) (en banc) (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) (Contracts, § 722, p. 654)). Thus, a condition precedent is "either an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *See Platt Pacific,* 24 Cal. Rptr.2d 597, 862 P.2d at 162; *see also* Cal. Civ.Code § 1436 (defining condition precedent as "one which is to be performed before some right dependent thereon accrues, or some act dependent thereon is performed"). Whether a contract contains a condition is a matter of contract interpretation. *See In re Bubble Up Delaware, Inc.,* 684 F.2d 1259, 1266 (9th Cir.1982).

█ The law distinguishes between a condition and a promise, and the respective consequences of their breach:

> A condition creates no right or duty of and in itself, but is merely a limiting or modifying factor. If it is breached or does not occur, the promisee acquires no right to enforce the promise. A promise raises a duty to perform and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other party.

*See United States v. Schaeffer,* 319 F.2d 907, 911 (9th Cir.1963) (citing 5 Williston on Con-

tracts §§ 663 and 665), *cert. denied*, 376 U.S. 943, 84 S.Ct. 798, 11 L.Ed.2d 767 (1964). A party may waive a condition inserted in a contract for his own benefit. *Id.* at 912.

■ The Fourth Funding clause states: When the limited partners of the partnerships listed in Exhibit A have approved the appointment of Pinnacle as the Managing General Partner, an additional Four Hundred Fifty Thousand Dollars ($450,000) will be paid to NHG. NHG will retain a ten percent (10%) interest in the General partners one percent (1%) interest in the partnerships. It is anticipated between the parties that the notification to the limited partners and the vote to approve the appointment of Pinnacle will be accomplished within ninety (90) days of the date of this Agreement.

NHG argues that the use of the word "when" is conditional because it is defined in *Webster's New Collegiate Dictionary* as "in the event that" and as a synonym for "if." NHG argues that the Agreement could not be performed because the institutional partners did not approve Pinnacle as the managing general partner. Therefore, NHG did not breach the contract. Pinnacle argues that the parties did not intend the Agreement to be conditional. In this case, the Fourth Funding clause, when considering all of the circumstances, is reasonably susceptible to different interpretations. The interpretation turned on the credibility of contradictory extrinsic evidence, thus the issue of interpretation was a question of fact for the jury.

Considering the evidence in the light most favorable to Pinnacle, and assuming that the jury resolved all conflicts in its favor, the court concludes that reasonable persons could differ as to the conclusions to be drawn from the evidence with respect to the breach of contract issue. The jury heard evidence about other agreements in which NHG's principals included clear language to make an agreement conditional. In addition, the jury heard evidence about NHG's negotiation of the Revised Letter of Agreement, the parties' contemporaneous statements, and the parties' actions which inferred that the Agreement was valid and enforceable without conditions. The court concludes that NHG has not satisfied the standard for judgment as a matter of law with respect to contract formation and breach of the contract.

### 2. Real Party in Interest

■ NHG argues that the court should set aside the jury's verdict on the ground that Pinnacle is not the real party in interest with respect to the damages it sought and recovered. NHG asserts that Pinnacle sought to recover damages on behalf of First West and Triad, in contravention of the real-party-in-interest rule. Under Rule 17(a) of the Federal Rules of Civil Procedure, "[e]very action shall be prosecuted in the name of the real party in interest." Fed.R.Civ.P. 17(a). "This rule requires that the party who brings an action actually possess, under the substantive law, the right sought to be enforced." *United HealthCare Corp. v. American Trade Ins. Co., Ltd.*, 88 F.3d 563, 569 (8th Cir.1996). The rule is a defense and is intended to protect a party from subsequent litigation by another actually entitled to recover. *Id.* (quoting Fed.R.Civ.P. 17(a), Advisory Committee Note). The real-party-in-interest defense is deemed waived if it is not raised with "reasonable promptness" in the trial court proceedings. *See id.; see also Sun Refining & Marketing Co. v. Goldstein Oil Co.*, 801 F.2d 343, 345 (8th Cir.1986). In this case, NHG failed to raise the defense in a timely manner and thus waived the defense. In addition, the defense fails on its merits. NHG negotiated the Revised Letter of Agreement with Pinnacle. Pinnacle is the real party in interest to recover full damages against NHG for breach of contract.

### 3. Damages

■ Under California law, the measure of damages for breach of contract "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ.Code § 3300. "An injured party may recover for the profits or benefits which he would have obtained by performance if he can establish them with reasonable certainty." *Fisher v. Hampton,*

44 Cal.App.3d 741, 118 Cal.Rptr. 811, 814 (1975); Cal. Civ.Code § 3301 (requiring damages to be "clearly ascertainable in both their nature and origin"). "[T]he amount of anticipated profits lost as a result of a breach of contract need not be established with certainty and '[i]t is sufficient that it be shown as a reasonable probability that the profits would have been earned except for the breach of the contract.'" *See Pacific Scientific Co. v. Glassey,* 245 Cal.App.2d 831, 54 Cal.Rptr. 235, 243 (1966) (quoting *Nelson v. Reisner,* 51 Cal.2d 161, 331 P.2d 17, 23–24 (1958)); *see also California Lettuce Growers v. Union Sugar Co.,* 45 Cal.2d 474, 289 P.2d 785, 793 (1955) (stating that the fact the amount of damages "maybe uncertain, contingent or difficult of ascertainment does not bar recovery"); BAJI 10.91. Thus, when the existence of lost profits has been established, recovery will not be denied "because the amount cannot be established with mathematical precision." *Resort Video, Ltd. v. Laser Video, Inc.,* 35 Cal.App.4th 1679, 42 Cal. Rptr.2d 136, 146 (1995). In addition, when loss of anticipated profits are included as an element of damages, only net profits are recoverable. *See id.* 42 Cal.Rptr.2d at 147. At times, courts have been reluctant to admit evidence of lost profits for real estate ventures. *See, e.g., Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1373 (9th Cir.1987).

NHG argues that it is entitled to judgment as a matter of law because of the lack of foundation Pinnacle provided at trial for the jury to do anything other than speculate as to the nature and amount of Pinnacle's damages. Pinnacle claims that NHG is merely debating the facts and weighing the evidence, which is contrary to the dictates of the JAML standard. Although the jury's verdict with respect to damages in large part mirrored Pinnacle's closing argument, argument is not evidence. The court agrees with NHG that a portion of the verdict cannot be sustained even when considering all evidence and reasonable inferences in favor of Pinnacle.

■ NHG challenges the jury's award of lost profits for property management fees, arguing that the verdict is not supported by the evidence and is pure speculation. The court agrees. The property management fees were based on NHG's projections of the gross annual fees. The projections were not based on NHG's prior history or experience. Rather, the projections were optimistic expectations based on mere speculation. With respect to the profit margin, Pinnacle relies on the testimony of Don Markey, the Chief Financial Officer of Pinnacle ("Markey"); Harrelson; David Brierton, the President of Dominium ("Brierton"); and Weyrick. Although Markey and Harrelson testified that they expected a 60 percent profit rate on the property management fees, this percentage was not based on prior experience or history. In addition, the court sustained objections during Markey's testimony with respect to the valuation of the property management fees. Whereas Pinnacle represents that Brierton expected a 50% rate of profit, the percentage was a gross margin percentage which did not take into account expenses. In addition, there was no evidence with respect to future performance of the properties. The court concludes that no reasonable jury could award net property management fees without resorting to conjecture and speculation. The jury's verdict awarding Pinnacle $7,300,000 for lost property management fees must be vacated.

■ NHG also challenges the accounts receivable award of $6,000,000 as speculative, arguing that there was no evidence as to the source of the accounts receivable or that the accounts receivable were collectible. In addition, NHG argues that there was no evidence presented with respect to the costs of any collection. The court agrees with NHG that the jury's award for the accounts receivable is speculative. There was no evidence presented as to the source of the accounts receivable. In addition, there was no testimony that the portfolio partnerships were able to pay the accounts receivable or that any portion of the accounts receivable were ever paid. Although there was undisputed testimony about the proper analysis to determine lost profits with respect to the collection of the accounts receivable, there was no testimony applying the formula. Whereas Pinnacle represents that Markey testified as

to the collection of the accounts receivable, the court sustained foundational objections to Markey's testimony. The jury was without evidence to reasonably infer the nature and extent of damages based on any accounts receivable. The jury's verdict awarding Pinnacle $6,000,000 for lost accounts receivable must be vacated.

Furthermore, NHG challenges the jury's valuation of the partnership interest itself, for which the jury awarded Pinnacle $5,000,000. At trial, there was testimony that Lynch valued the general partnership interest sometime in 1995 or 1996. NHG disputes the award in that the amount does not take into account that the portfolio was "dying a rapid financial death" or that Pinnacle would have had to pay for the portfolio under its contract with NHG. Pinnacle does not dispute that the jury's award must be reduced by the cost of the transaction. Whereas the court recognizes that there was sufficient evidence from which a reasonable jury could infer that the general partnership interest was worth $5,000,000, the court determines that no reasonable jury could award damages without offsetting the amount that Pinnacle would have had to pay under its contract. Based on the evidence and the reasonable inferences to be drawn from the evidence, the court concludes that the jury's award must be reduced by $2,200,000.

## B. Motion for a New Trial

A new trial may be awarded under Federal Rule of Civil Procedure 59(a) to prevent an injustice, or when the verdict strongly conflicts with the great weight of evidence. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co. Inc.*, 466 F.2d 179, 186 (8th Cir.1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). The court should grant a new trial only if it finds that an error "misled the jury or had a probable effect on its verdict." *E. I. du Pont de Nemours v. Berkley & Co., Inc.*, 620 F.2d 1247, 1257 (8th Cir.1980).

### 1. NHG's Motion for New Trial

In addition to its motion for judgment as a matter of law, NHG alternatively moves for a new trial or remittitur. Pursu-

ant to Rule 50(c) of the Federal Rules of Civil Procedure, the district court must determine whether the motion for new trial should be conditionally granted or denied in the event that the judgment is vacated or reversed. *See* Fed.R.Civ.P. 50(c); *see also Mears v. Nationwide Mut. Ins. Co.*, 91 F.3d 1118, 1123 (8th Cir.1996); 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2539 (1995 & Supp.1998). "[T]he prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence." *Leichihman v. Pickwick Intern.*, 814 F.2d 1263, 1266 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). At times, remittitur is an appropriate alternative remedy to a new trial. *See Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir. 1997); *see also American Road Equipment Co. v. Extrusions, Inc.*, 29 F.3d 341, 345 (8th Cir.1994) (remanding for new trial unless plaintiff consented to a remittitur of the damage award). The court is heedful of the role of the jury as the finder of fact. *See Slatton v. Martin K. Eby Construction Co., Inc.*, 506 F.2d 505, 508 (8th Cir.1974) (recognizing the fundamental premise that a jury's decision on the facts deserves great weight), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975). "A district court should grant remittitur only when the verdict is so grossly excessive as to shock the court's conscience." *See American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986); *Ouachita National Bank v. Tosco Corp.*, 716 F.2d 485, 488 (8th Cir.1983) (en banc); *see also Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir.1996). " 'In cases where a jury awards actual damages in excess of the amount proved, remittitur to the maximum amount proved is an appropriate remedy.' " *American Road Equipment Co. v. Extrusions, Inc.*, 29 F.3d 341, 345 (8th Cir.1994) (quoting *In re Knickerbocker*, 827 F.2d 281, 289 n. 6 (8th Cir.1987)).

In this case, the jury's verdict shocks the conscience of the court, considering the complete failure of proof of lost profits which necessarily resulted in the jury's resort to speculation. The court determines

that a miscarriage of justice would result if the court were to allow the jury's verdict to stand. The maximum amount proved for remittitur purposes is $2,800,000. The court determines that NHG's motion for new trial should be granted with respect to the damages issue if the judgment is vacated or reversed, unless Pinnacle consents to a remittitur of the damage award to $2,800,000. Thus, the court conditionally grants NHG's motion for new trial, in the event that the judgment is vacated or reversed and in the event that Pinnacle does not consent to a remittitur.

### 2. Pinnacle's Motion for New Trial

Because the court granted NHG's request for post-trial relief, the court considers Pinnacle's motion for a new trial of Pinnacle's claims against Dominium. Pinnacle challenges evidentiary rulings with respect to letters sent by Pinnacle to Dominium's counsel, the exclusion of a claim for tortious interference with prospective contractual relations with the Institutional Fund, the admission of testimony regarding Dominium's employees, and the jury instructions.

The court has reviewed the record and evidentiary rulings and determines that Pinnacle has failed to articulate any error committed by the court which would require a new trial. Furthermore, there was no evidence presented at trial from which a reasonable jury could determine that Dominium interfered with prospective contract between Pinnacle and the Institutional Fund investors.

 With respect to Pinnacle's claims that the court erred in instructing the jury, the court determines that Pinnacle has failed to state a basis for this court to grant a new trial. The instructions given to a jury must be read as a whole and considered in light of the entire charge. *See Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 731 (8th Cir.), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). As stated by the Eighth Circuit Court of Appeals:

It is well established that a party is entitled to have the jury instructed on its theories if the proposed instructions are correct statements of the law and sup-

ported by the evidence. *Hoselton,* 48 F.3d at 1063. The district court, however, is not bound to give the instruction requested by the litigants. Rather, the court has broad discretion in choosing the form and the language of the instructions. *Essco Geometric v. Harvard Industries,* 46 F.3d 718, 727 (8th Cir.1995).

*Arkwright Mutual Ins. Co. v. Gwinner Oil, Inc.,* 125 F.3d 1176, 1180 (8th Cir.1997).

 Pinnacle alleges error concerning Instruction No. 35. In Instruction No. 35, the court instructed the jury that "[i]f you determine that a party is entitled to damages, you are instructed not to compensate that party more than once for the same loss." Pinnacle argues that the instruction is misleading because it gives the false impression that once the jury awards Pinnacle damages for breach of contract, they were precluding from finding further liability against Dominium for interference with contract. The court disagrees with Pinnacle's characterization of the instruction. The instruction pertained to damages rather than liability. Because the jury did not find Dominium liable to Pinnacle for any tort, the jury did not reach the issue of damages with respect to Pinnacle's claims against Dominium.

Pinnacle also alleges that the court erred in giving Instruction Nos. 28, 29, and 30. The instructions instructed the jury on tortious interference with contract, tortious interference with prospective contractual relations, and "wrongful" conduct. The court gave the following instruction to the jury:

Pinnacle seeks to recover damages based upon a claim that Dominium interfered with Pinnacle's contractual relations with NHG. For interference with contractual relations to be established, Pinnacle must prove the following five elements by a preponderance of the evidence:

1. A valid contract existed between Pinnacle and NHG in which Pinnacle was to acquire all of NHG's partnership interests and assets;

2. Dominium knew of the existence of this contract;

3. Dominium intentionally engaged in acts or conduct which prevented or

disrupted Pinnacle's acquisition of NHG's interests and assets;

4. Dominium intended to prevent or disrupt Pinnacle's contract to acquire NHG's interests and assets; and

5. The acts or conduct of Dominium which interfered with Pinnacle's contractual relations were a cause of damage to Pinnacle.

*See* Jury Instruction No. 28; *see also Pacific Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 270 Cal.Rptr. 1, 791 P.2d 587, 589–90 (1990) (en banc) (describing elements for tort of intentional interference with contractual relations).

In addition, the court instructed the jury on intentional interference with prospective contractual relations:

Pinnacle also seeks to recover damages based upon a claim against Dominium for intentional interference with prospective contractual relations. For intentional interference with prospective contractual relations to be established, Pinnacle must prove the following five elements by a preponderance of the evidence:

1. Pinnacle had an economic relationship with NHG, containing a probable economic benefit or advantage to Pinnacle;

2. Dominium knew of the existence of the relationship;

3. Dominium intentionally engaged in wrongful conduct designed to interfere with or disrupt this relationship;

4. The economic relationship was actually interfered with or disrupted; and

5. Dominium's wrongful conduct which was designed to interfere with or disrupt this relationship caused damage to Pinnacle.

*See* Jury Instruction No. 29; *see also Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (Cal.1995). With respect to "wrongful conduct," the court instructed the jury that:

To be "wrongful" in this context, Dominium's conduct must be something more than permissible action that happens to interfere with Pinnacle's prospective economic relations. More specifically, the conduct must be illegal or unfair or immoral according to the common understanding of society; or it must violate a statute or other regulation or a recognized rule of common law or an established standard of a trade or profession; or it must be independently tortious, in the sense that it injures a third person; or it must constitute a restraint of trade.

*See* Jury Instruction No. 30; *see also Stella Foods, Inc. v. Superior Court,* 60 Cal.App.4th 299, 70 Cal.Rptr.2d 91, 94 (1998).

■ Pinnacle claims that the instructions were misleading and confusing. Specifically, Pinnacle asserts that the court erred by not including a statement that Dominium's conduct need not be "wrongful" to establish a claim for tortious interference with contract. The court did not instruct the jury that a showing of wrongful conduct was necessary to establish a claim for tortious interference with contract. In addition, during closing argument, counsel for Pinnacle directed the jury's attention to the distinction between the torts of intentional interference with contract and intentional interference with prospective contractual relations. Pinnacle has failed to state an error which warrants a new trial.

■ Furthermore, Pinnacle claims that the court erred by not giving Pinnacle's proposed instructions 3 and 4. Pinnacle asserts that these instructions would have changed the outcome in this case. Pinnacle's proposed instruction 3 pertained to a party's failure to produce evidence, and proposed instruction 5 pertained to inferences to be drawn from the evidence. Although the court did not specifically give Pinnacle's requested instructions, the court's instructions provided Pinnacle with leeway to present its arguments to the jury about the appropriate inferences to be drawn from the evidence. Pinnacle has failed to present prejudicial error necessitating a new trial.

## C. Amendment of the Judgment

Pinnacle requests the court to amend the judgment pursuant to Rule 60(a) of the Federal Rules of Civil Procedure to include Nationwide Development Group, L.P. in the judgment. Rule 60(a) permits the court to

correct clerical mistakes in judgments arising from oversight or omission. Fed.R.Civ.P. 60(a). In this case, the parties and the court collectively referred to Nationwide Housing Group and Nationwide Development Group, L.P., as "NHG." There is no dispute that Pinnacle's judgment is against both Nationwide Housing Group and Nationwide Development Group, L.P.; thus, an amendment to the judgment to include Nationwide Development Group, L.P., is necessary to conform to the jury's verdict.

## D. Declaratory Judgment

 Pinnacle moves for declaratory judgment that Dominium has no valid, enforceable contract to acquire NHG's interests or assets. In essence, Pinnacle seeks a declaration of specific performance of its contract with NHG. Specific performance is an equitable remedy for breach of contract. *See Golden West Baseball Co. v. City of Anaheim*, 25 Cal.App.4th 11, 31 Cal.Rptr.2d 378, 403 (1994). In this case, Pinnacle has not satisfied the requisites for such equitable relief. *See Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal.App.3d 571, 193 Cal.Rptr. 409, 411 (1983) (discussing the availability of the remedy of specific performance). After this court denied Pinnacle's motion for a preliminary injunction, Pinnacle elected to pursue its legal remedy of damages. Since this litigation commenced, NHG has transferred its interests to Dominium. Specific performance is not an appropriate remedy at this juncture. The court denies Pinnacle's request for declaratory judgment.

## CONCLUSION

Based upon a review of the file, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. NHG's motion for judgment as a matter of law is granted in part and denied in part (Doc. No. 128). The jury's verdict awarding Pinnacle damages in the amount of $18,300,000, is vacated in part in the amount of $15,500,000.

2. In the event that this court's judgment is vacated or reversed, the court conditionally grants NHG's alternative motion for new trial on the issue of damages, unless Pinnacle consents to remit $15,500,000 of the jury's damages award, and to entry of judgment in the amount of $2,800,000 (Doc. No. 128);

3. Pinnacle's motion for post-trial relief is granted in part and denied in part (Doc. No. 136). Pinnacle's motions for new trial and for declaratory judgment are denied. Pinnacle's motion to amend the judgment to include Nationwide Development Group, LP, is granted.

4. The judgment dated March 9, 1998, is vacated in part, amended in part, and entered in favor of cross-claimant Pinnacle Group Realty Management Company and against cross-defendants Nationwide Housing Group and Nationwide Development Group, LP, in the amount of $2,800,000.